## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. **07-CV-849-EWN-MJW**

**JOSEPH SCHMIDT**,

      Plaintiff,

v.

**SUNCOR ENERGY (U.S.A.) INC.**

      Defendant.

---

### BRIEF IN SUPPORT OF SUNCOR'S MOTION FOR SUMMARY JUDGMENT

---

Defendant, Suncor Energy (U.S.A.) Inc. ("Suncor"), through its attorneys, Brownstein Hyatt Farber Schreck, P.C., submits this Brief in Support of Suncor's Motion for Summary Judgment.

### <u>INTRODUCTION</u>

Suncor terminated Schmidt for violating Suncor's Standards of Conduct by becoming insubordinate with his supervisor and acting in a threatening and aggressive manner towards him.  Simply put, when Schmidt was getting ready to leave work on January 19, 2005 his supervisor, David Leskovisek ("Leskovisek"), asked him if he had finished repairing a pump (which Leskovisek had repeatedly reminded Schmidt had to be repaired that day).  Schmidt responded by screaming at Leskovisek that "he [Schmidt] did not work at the whim" of Leskovisek, and he did not intend to finish the job that day.  When Leskovisek attempted to calm Schmidt, Schmidt jumped out of his seat and approached Leskovisek.  Leskovisek responded by

telling Schmidt not to return to work the next day, which order Schmidt ignored.  When Schmidt returned to work the next day, the Human Resources Director, Frank Cicholski ("Cicholski"), informed Schmidt that he was being suspended.   At that time, Schmidt again threatened Leskovisek, angrily getting up, pointing his finger at Leskovisek, and stating in an aggressive tone:  "I'll see you later!"

Despite his own wrongdoing, Schmidt brought this lawsuit alleging that he was subject to discrimination at Suncor based on his race (Caucasian), color (white), religion (Christian), or ancestry (German) in violation of State Anti-Discrimination laws or Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").  Schmidt further claims that foul language in the work place, as well as "a general disregard for a safe work environment," created a hostile work environment under Title VII.  The undisputed facts, however, demonstrate that Schmidt's claims are without merit, warranting summary judgment.  Specifically:

•       Summary judgment should be granted on Schmidt's race-discrimination claim under Title VII and the State Anti-Discrimination laws because Schmidt cannot establish a prima facie case of reverse race discrimination, and because Schmidt cannot show that Suncor's proffered reason for terminating him was pretextual.

•       Summary judgment should be granted on Schmidt's religious-discrimination claim because he cannot establish a prima facie case of religious discrimination, and because Schmidt cannot show that Suncor's reason for terminating him was pretext for discrimination.

•       Summary judgment should be granted on Schmidt's national-origin-discrimination claim because Schmidt cannot establish that Suncor's reason for terminating him was pretextual.

•       Schmidt's hostile work environment claim should be dismissed, or summary judgment should be granted on that claim, because Schmidt has failed to allege facts sufficient to

establish a hostile work environment.

## STATEMENT OF UNDISPUTED FACTS

1.     On April 30, 2003, ConocoPhillips Services, Inc. hired Schmidt as a pump mechanic.

2.     In August 2003, Suncor purchased the job site from ConocoPhillips Services, Inc., and Suncor hired Schmidt as a pump mechanic.

3.     Throughout his employment with ConocoPhillips Services, Inc. and then Suncor, Schmidt's immediate supervisor was Leskovisek.

4.     On January 19, 2005, Leskovisek assigned Schmidt and his work partner, Edward Armijo ("Armijo"), to repair an asphalt loading pump, stressing that the repair needed to be completed that day.  (Declaration of Leskovisek at ¶ 4(Ex. A).)

5.     At approximately 3:15 p.m., Leskovisek saw Schmidt dressed in his street clothes and preparing to leave work.  Leskovisek asked about the status of the pump repair.  (Id. at ¶ 5.) Schmidt responded by screaming at Leskovisek that "he [Schmidt] did not work at the whim of Leskovisek," and that he did not intend to finish the job that day.  (Id. at ¶ 6.)  When Leskovisek attempted to calm Schmidt, Schmidt jumped out of his seat and approached Leskovisek. Leskovisek – who felt physically threatened by Schmidt's conduct – responded by telling Schmidt not to return to work the next day. (Id.)

6.     As Schmidt left, Schmidt muttered that he intended to return the next day.  (Id. at ¶ 7.) Leskovisek reiterated to Schmidt that he should not return.  (Id.)

7.     Richard Shields ("Shields"), another pump mechanic, witnessed the exchange. (Id. at ¶ 8.)  Shields – concerned that Schmidt might attempt to physically harm Leskovisek – decided to stay around because he did not want to leave Leskovisek alone in the building with

Schmidt.  (Id.)

8.      Leskovisek immediately reported the incident to the Maintenance Superintendent, Jason Wright ("Wright"), and the Manager of Labor and Employee Relations, Cicholski.  (Id. at ¶ 9.)

9.      Despite Leskovisek's express directive not to return to work the next day, Schmidt reported to work.  (Id. at ¶ 10.)

10.     At that time, Leskovisek, Wright, Cicholski, and Union Stewards, Jeff Parker and Gary White, met with Schmidt.  At that meeting, Cicholski asked Schmidt if Leskovisek had directed him not to come to work, and Schmidt acknowledged that he had.  (Id. at ¶ 11.)

11.     Cicholski informed Schmidt that he was being suspended pending an investigation.  (Id. at ¶ 12.)

12.     Schmidt responded by again threatening Leskovisek.  He angrily stood up, pointed his finger at Leskovisek, and aggressively stated:  "I'll see you later!"  (Id. at ¶ 13.) Those present at the meeting noted that Schmidt emphasized the word "you" when delivering his threat to Leskovisek.  (Id. at ¶ 14.)

13.     Suncor's Standards of Conduct provide:

**ALL EMPLOYEES SHALL <u>NOT</u> ENGAGE IN ANY OF THE FOLLOWING:**

1.      Insubordination – refusal or failure to perform assigned work.

. . .

10.     Engaging in acts of physical aggression, and or fighting. Engaging in verbal abuse aimed towards co-workers, management, supervision or visitors to the site.

(Suncor's Standards of Conduct ¶ 4.0 (Ex. B) (emphasis in original).)

14.     Per the Standards, "[a]nyone willfully or carelessly disregarding these standards will be subject to immediate discharge."  (Id.)

15.     Schmidt was aware of these Standards of Conduct, as evidenced by his executed acknowledgement.  (Ex. C.)

16.     On February 1, 2005, Suncor terminated Schmidt.  Suncor told Schmidt that he was "being terminated for violation of the Suncor Energy (U.S.A.) Inc. Denver Refinery Standards of Conduct as [he] became insubordinate with [his] Supervisor, and acted in a threatening and aggressive manner towards him." (Letter from Wright to Schmidt dated February 1, 2005 (Ex. D).)

17.     On May 12, 2005, Schmidt filed a charge of discrimination with the Colorado Civil Rights Division (the "CCRD") and the Equal Employment Opportunity Commission (the "EEOC") alleging discrimination.  (Schmidt's Responses to Suncor's Requests for Admissions, p. 12 (Ex. E).)  This is the only Charge of Discrimination Schmidt has brought concerning the claims at issue in this case.  (Id.)

18.     On August 7, 2006, the CCRD ruled that from its investigation there was not sufficient evidence to support Schmidt's claim of discrimination.  Therefore, the CCRD issued a "No Probable Cause" determination.  On January 23, 2007, the EEOC adopted the findings of the CCRD and issued a "Dismissal and Notice of Rights."

19.     On April 2, 2007, Schmidt brought his Complaint, Case No. 07CV1462.

## LEGAL ARGUMENT

Summary judgment is proper if the pleadings, depositions, admissions, answers to interrogatories, and affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265, 273 (1986); Fed. R. Civ. P. 56(c). The non-

moving party cannot rest upon mere allegations or denials; it must present specific facts showing the existence of a genuine and material factual dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 212 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is significantly probative, or more than merely colorable, such that a fact finder could reasonably return a verdict for the non-moving party. See Anderson, 477 U.S. at 248-50. A non-moving party cannot withstand a motion for summary judgment without providing admissible facts in support of its claims. See Sullivan v. Davis, 172 Colo. 490, 496, 474 P.2d 218, 221 (1970).  Applying these standards to the undisputed facts in this case yields the conclusion that Suncor is entitled to summary judgment in its favor on all of Schmidt's claims.

I.      **SCHMIDT'S DISCRIMINATION CLAIMS**

Title VII bars, among other things, race, religious, and national origin discrimination with respect to "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2. When, as here, a plaintiff employee relies on circumstantial evidence to prove his claim, courts apply the framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-07, 93 S. Ct. 1817, 36 L. Ed. 2d 688 (1973).  See, e.g., Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1113 (10th Cir. 2007) (applying McDonnell Douglas).

Under that framework, the plaintiff-employee must first establish a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  If he makes that showing, the burden shifts to the defendant-employer to state a legitimate, nondiscriminatory reason for the challenged employment action.  Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005).  Finally, in order to avoid summary judgment, the employee must then offer evidence that the employer's proffered reason was pretext for discrimination.  Id.

As fully set forth below, Schmidt's discrimination claims should be dismissed because

Schmidt cannot establish a prima facie case of discrimination, and because Schmidt cannot show that Suncor's proffered reason for terminating him was a pretext for what was in truth discrimination.

> **A.   Summary Judgment Should Be Granted on Schmidt's Race and Religious Discrimination Claims Because Schmidt Cannot Establish a Prima Facie Case of Discrimination.**

> 1.   Schmidt Cannot Establish a Prima Facie Case of Race Discrimination.

As a white male alleging race discrimination, Schmidt must proceed under a reverse-race-discrimination theory.  There are two general methods by which Schmidt may proceed on a reverse-discrimination claim.  Schmidt may proceed by showing:  (1) background circumstances that support an inference that Suncor is one of those unusual employers that discriminates against the majority; (2) he was qualified for his job; (3) despite his qualifications, he was terminated; and, (4) the job was not eliminated after his discharge.  See Notari v. Denver Water Dep't, 971 F.2d 585, 589 (10th Cir. 1992); Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1229 (10th Cir. 2000).  Or, alternatively, Schmidt may proceed by showing direct or indirect evidence of discrimination sufficient to support a reasonable probability that but for his status as a Caucasian he would not have been terminated.  See Notari, 971 F.2d at 590.  "The standard for a prima facie case under either formulation is higher than for a normal discrimination case because a reverse-discrimination plaintiff is not entitled to the same presumption of discrimination as a member of a traditionally disadvantaged group."  Schrader v. E.G. & G., Inc., 953 F. Supp. 1160, 1166 (D. Colo. 1997).

Here, Schmidt cannot make either showing.  There simply is no evidence that goes to show that Suncor is one of those unusual employers that discriminates against the majority, nor is there direct or indirect evidence sufficient to support a reasonable probability that but for his status as a white man he would not have been terminated.  Indeed, all of the individuals involved

in the decision to terminate Schmidt, including Wright, Leskosivek, and Cicholski, are Caucasian.  Moreover, in response to discovery requests Schmidt provides **no** facts that would support an inference that Suncor is one of those unusual employers that discriminates against Caucasians.  Rather, when asked to "[d]escribe in detail all facts that support your contention that you were discriminated against by Suncor because of your race," Schmidt merely states "[b]eing called the white boy."  Even assuming Schmidt's co-workers occasionally referred to him as "the white boy," this fact is insufficient as a matter of law to establish that but for his status as Caucasian he would not have been terminated.  Accordingly, summary judgment should be granted on this claim.

      2.      Schmidt Cannot Establish a Prima Facie Case of Religious Discrimination.

To establish a prima facie case of religious discrimination where the plaintiff claims he was discriminated against because he did not share certain religious beliefs held by his supervisors, the plaintiff must show (1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and, (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs.  Shapolia v. Los Alamos Nat'l Laboratory, 992 F.2d 1033, 1038 (10th Cir. 1993).

Here, Schmidt has not met – and, indeed, cannot meet – his prima facie burden.  In fact, as Schmidt was forced to concede in his discovery responses, the sole basis for his religious-discrimination claim is that his colleagues used profanity on the job, and that use of profanity was "against [his] Christian values:"

**INTERROGATORY NO. 1:**

Describe in detail all facts that support your contention that you were discriminated against by Suncor because of your religion.

**RESPONSE:**  Ongoing disregard for requests to stop swearing.  Stating that it was against my Christian values.

Even if Schmidt "made ongoing requests to stop swearing" on the grounds that the swearing "was against [his] Christian values" (Ex. F at p. 8), that fact does not demonstrate that Suncor's "actions were taken because of a discriminatory motive based upon [Schmidt's] failure to hold or follow his . . . employer's religious beliefs."  Simply stated, Schmidt cannot show that there is a nexus between any alleged discriminatory behavior, and the disputed employment decision.  As a result, summary judgment should be granted on this claim.  Stover v. Martinez, 382 F.3d 1064, 1077 (10th Cir. 2004).

**B.      Summary Judgment Should Be Granted on Schmidt's Discrimination Claims Because Schmidt Cannot Establish that Suncor's Legitimate Non-Discriminatory Reason for Terminating Him Was Pretextual.**

Even if Schmidt could establish a prima facie case, summary judgment should still be granted because Schmidt cannot show that Suncor's proffered reason for terminating him – his insubordinate and threatening behavior towards his supervisor, Leskovisek – was pretext for what was in truth a discriminatory purpose.

To establish pretext, a plaintiff must show:

> either that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."  Plaintiff may accomplish this by demonstrating "' such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence.'"  However, the plaintiff's "mere conjecture that [her] employer's explanation is a pretext for intentional discrimination is an

insufficient basis for denial of summary judgment."

Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1317 (10th Cir. 1999) (citations omitted).

Schmidt has not shown – and cannot show – that a discriminatory reason more likely motivated Suncor or that Suncor's proffered reason is unworthy of credence.   Schmidt's discrimination claims are based **solely** on two things:  (1) his co-workers referred to him as "the white boy;" and, (2) there was a general use of profanity in the workplace that offended him as a Christian. (Ex. F.)   These allegations, however, do not create a fact issue on pretext.

In Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir. 1994), the Tenth Circuit set forth the standard to be applied in determining whether allegedly discriminatory statements are sufficient to create a genuine issue of material fact on pretext.  The Tenth Circuit noted that "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions."  Id. (quoting Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994)).   The Tenth Circuit then explained that to show a discriminatory animus, the plaintiff must demonstrate a nexus between the allegedly discriminatory statements and the defendant's decision to terminate her.  Id.  To do so, "the comments must be directed at the plaintiff or the position, must be made by a decision maker, and must be made in a context related to the decision at issue."  Taken v. Oklahoma Corp. Comm'n, 934 F. Supp. 1294, 1300 (W.D. Ok. 1996) (citing Cone, 14 F.3d at 531-32); see also Figures v. Board of Pub. Utilities, 967 F.2d 357, 360-61 (10th Cir. 1992) (in a Title VII case, evidence of racial comments is not probative of any issue in the case unless it is linked to relevant personnel actions); Turner v. Local 1211, Int'l Union, Auto. Aerospace & Agric. Implement Workers of Am., UAW, 149 F.3d 1184 (6th Cir. 1998) (union president's use of term "fucking niggers" when referring to grievances filed by plaintiff found to be too isolated and not causally related to plaintiff's race-

discrimination claim); <u>Nazaire v. Trans World Airlines, Inc.</u>, 807 F.2d 1372, 1380-81 (7th Cir. 1986), <u>cert. denied</u>, 481 U.S. 1039 (1987) (allegations that co-workers called plaintiff "black" and "monkey" were found to be vague and inadequate to support racial discrimination claim); <u>Johnson v. Bunny Bread Co.</u>, 646 F.2d 1250, 1257 (8th Cir. 1981) (when there was "no steady barrage of opprobrious racial comment," occasional use by supervisors and fellow employees of the term "nigger" to refer to plaintiffs held not to violate Title VII").

In this case, Schmidt cannot show the requisite nexus between the alleged discriminatory statements and Suncor's decision to terminate him.  The only discriminatory statements – referring to Schmidt as "the white boy"[1] – were allegedly made by his co-workers, not his supervisor.  Schmidt's co-workers, however, were not involved in the decision to terminate Schmidt.  Moreover, there is not evidence that the alleged statements were made in a context related to the decision to discharge Schmidt.  Accordingly, these statements were merely "isolated comments" insufficient to overcome summary judgment.  <u>See</u> <u>Rea</u>, 29 F.3d at 1457.

## II.   SCHMIDT'S HOSTILE WORK ENVIRONMENT CLAIM

Schmidt also claims that he was subjected to "vulgar and offensive language . . . creating a hostile work environment."  (Complaint, attached Charge of Discrimination ¶ IV.)  When asked to "describe in detail all facts that support your contention that you were subject to a hostile work environment while at Suncor," Schmidt merely states:  "Continued swearing and cursing even after contacting H.R."  (Ex. F.)  It is unclear from his Complaint and responses to discovery whether he is claiming that his race or religion (or both) form the basis of a hostile-work-environment claim.  Either way, summary judgment should be granted on this claim.

To prove a hostile-work-environment claim, a plaintiff must show that under the totality

---

[1]   Schmidt has not alleged that any of the workplace profanity was directed at him as a member of a protected class.  The only time profanity can form the basis of a claim is when the profanity has discriminatory overtones targeted at the plaintiff due to his membership in a protected class.

of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment; and, (2) the harassment was racial [or religious-based] or stemmed from racial [or religious-based] animus. Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994). General harassment if not racial or religion-based is not actionable. Id. "To establish a racially hostile work environment . . . plaintiffs must prove more than a few isolated incidents of racial enmity." Hicks v. Gates Rubber Co., 833 F.2d 1406 (10th Cir. 1987) (quoting Snell v. Suffolk Co., 782 F.2d 1094, 1103 (2d Cir. 1986)); Accord Gilbert v. City of Little Rock, 722 F.2d 1390, 1394 (8th Cir. 1983), cert. denied, 466 U.S. 972 (1984). "Casual comments or accidental or sporadic conversation will not trigger equitable relief pursuant to the statute." Hicks, 833 F.2d at 1412-13 (quoting Snell, 782 F.2d at 1103); Accord Rogers v. Equal Employment Opportunity Comm'n, 454 F.2d 234, 238 (5th Cir. 1971), cert. denied, 406 U.S. 957 (1972). "Instead, there must be a steady barrage of opprobrious racial comment." Hicks, 833 F.2d at 1412-13 (quoting Johnson, 646 F.2d at 1257). Title VII is violated only where the work environment is so "heavily polluted with discrimination as to destroy the emotional and psychological stability of the minority [employee]." Hicks, 833 F.2d at 1412-13 (quoting Rogers, 454 F.2d at 238).

In Hicks, 833 F.2d at 1412-13, for example, the Tenth Circuit considered whether the plaintiff had presented evidence of "a steady barrage of opprobrious racial comment" sufficient to survive summary judgment. In that case, there was evidence that "an atmosphere existed in which racial slurs and jokes were tolerated," "[a]t least one supervisor . . . referred to blacks as 'niggers' and 'coons,'" on one occasion a supervisor made a reference to "'lazy niggers and Mexicans' that appeared to have been specifically directed at" the plaintiff, and one of the security guards referred to the plaintiff as "'Buffalo Butt[.]'" Id. at 1409. Even in the face of those

allegations, the trial court in <u>Hicks</u> found, and Tenth Circuit affirmed the finding, that the plaintiff had failed to establish a racially hostile work environment because the evidence merely "shows incidents that were essentially occasional and incidental." <u>Id.</u> at 1413.

This case stands in stark contrast to the racial hostility in <u>Hicks</u> that the Tenth Circuit found to be insufficient to state a racially hostile work environment claim.  In this case, the **only** racial remark alleged is that Schmidt was referred to as "the white boy."  (Ex. F at Interrogatory to. 2.)  And, with respect to religion, Schmidt has failed to identify a single remark that was religious-based or stemmed from religious-based animus.  Rather, Schmidt's religious-based complaint is that general "swearing and cursing" was "against his Christian values."  (Ex. F at Interrogatory No. 1).  Accordingly, because Schmidt has alleged, at best, only a single "isolated incident[]" involving a race-related comment (and no religion-based comments), and because Schmidt has not alleged a "steady barrage of opprobrious racial comment," as a matter of law he has failed to state a claim for a hostile work environment.  <u>Hicks</u>, 833 F.2d at 1412-13; <u>Bolden</u>, 43 F.3d at 551 (recognizing that "general torment and taunting if not racially discriminatory are not actionable"); <u>Sprague v. Thorn Americas, Inc.</u>, 129 F.3d 1355, 1366 (10th Cir. 1997) (holding that unpleasant and offensive conduct does not necessarily create a hostile work environment); <u>Williams v. Kansas Gas and Elec. Co.</u>, 805 F. Supp. 890, 901 (D. Kan. 1992) (granting summary judgment on a racial hostile work environment claim because there were "only a few instances . . . regarding use of epithets or comments," and thus "the racial comments which did occur were occasional, rather than a steady barrage").[2]

---

[2]   Colorado has adopted the same standards applicable to Title VII cases when considering claims brought under the Colorado Anti-Discrimination Act.  <u>Stinnett v. Safeway, Inc.</u>, 337 F.3d 1213, 1219 (10th Cir. 2003); <u>Colo. Civil Rights Comm'n v. Big O Tires, Inc.</u>, 940 P.2d 397, 400-01 (Colo. 1997).  Accordingly, since summary judgment should be granted on Schmidt's Title VII claims for disparate treatment and hostile work environment, summary judgment should be granted on his state law claims as well.

## **CONCLUSION**

For the reasons set forth above, the Court should grant Suncor's Motion for Summary Judgment.

Respectfully submitted this 25th day of September, 2007

s/ Jeanine M. Anderson
Jeanine M. Anderson
Brownstein Hyatt Farber Schreck, P.C.
410 17th Street, 22nd Floor
Denver, Colorado 80202
Phone:  (303) 223-1100
Fax: (303) 223-1111
E-mail:    janderson@bhfs.com

ATTORNEYS FOR DEFENDANT

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 25th day of September 2007, I served the document or paper to the following non CM/ECF participant(s) in the manner indicated above the non-participant's name:

> **U. S. Mail and Facsimile**
> Joseph Schmidt
> 363 Van Gordon St. 16-188
> Lakewood, CO 80228

> s/ *Paulette M. Chesson*
> Paulette M. Chesson

10225\4\1084714.1